# IN THE UNITED STATES DISTRICT COURT
# FOR THE MIDDLE DISTRICT OF PENNSYLVANIA

ROBERT and DEANNA VASKAS,

    Plaintiffs,

        v.

KENWORTH TRUCK CO. and PACCAR, INC.,

    Defendants.

CIVIL ACTION NO. 3:10-CV-1024

(JUDGE CAPUTO)

## MEMORANDUM

Presently before the Court are the Motion for Summary Judgment (Doc. 14) filed by Defendants PACCAR Inc and Kenworth Truck Company and the Motion to Supplement (Doc. 18) filed by Plaintiffs Robert and Deanna Vaskas. Plaintiffs brought this action asserting claims of negligence, strict products liability, breach of warranty, and loss of consortium against Defendants to recover damages for personal injuries sustained by Robert Vaskas. (Doc. 1, Ex. A.) Defendants move for summary judgment pursuant to Federal Rule of Civil Procedure 56(c). Plaintiffs move for this Court to consider an addendum to their expert's report in ruling on Defendants' summary judgment motion. For the reasons that follow, Plaintiffs' Motion to Supplement (Doc. 18) is granted and Defendants' Motion for Summary Judgment (Doc. 14) is granted in part and denied in part.

## I. Background

Defendant Kenworth Truck Company is an unincorporated division of Defendant PACCAR Inc. (Doc. 14 at 1.) Defendants manufacture and design tractor cabs, including the Kenworth T800. (Doc. 1, Ex. A at ¶ 8.) On May 19, 2005, Defendants delivered a 2005 Kenworth T800 tractor ("the Kenworth tractor") to its purchaser, R.C. Moore, Inc. ("R.C. Moore"). (Doc. 14, Ex. B.) The cab access system on the Kenworth tractor was comprised of two aluminum steps with rounded edges and a vertical handhold mounted on the right exterior of the cab. (Peck Dep. at 53–54, 82–83.) The Kenworth tractor did not conform to its design specifications, as the distance from the tractor's top step to its bottom step (21.5 inches) exceeded the distance on the design specifications (19.5 inches). (*Id.* at 77,

79.) Also, the depth of the tractor's steps (4.625 inches) did not meet Kenworth's internal requirements (4.76 inches) or those of the applicable Federal Motor Vehicle Safety Standards (at least 5 inches). (Doc. 24, Ex. F at ¶ 2.)

In early June 2007, Plaintiff Robert Vaskas ("Mr. Vaskas"), who had worked as a truck driver for several trucking companies after receiving his commercial driver's license in 1996, became employed by R.C. Moore. (Vaskas Dep. at 50–56, 99–100.) Prior to working for R.C. Moore, Mr. Vaskas had extensive experience with commercial and industrial vehicle step systems and different kinds of trucks or tractors. (*Id.* at 33–39, 50–56, 64, 66–68, 73–74, 76–80, 83–88.) After completing safety training, Mr. Vaskas began operating the Kenworth tractor as a truck driver for R.C. Moore. (*Id.* at 101, 104.) At approximately 10:30 PM on August 21, 2007, toward the beginning of his work shift, Mr. Vaskas was exiting the cab of the Kenworth tractor with his right hand positioned on the tractor's handhold and both of his feet on the top step. (*Id.* at 134, 144.) As he lowered his left foot to the bottom step and reached for the handhold with his left hand, his right foot slipped off the top step, causing him to fall. (*Id.* at 145–48.) He hit his head on the top step, lost consciousness, and sustained serious injuries to his neck and back. (*Id.* at 148–49, 165–66.) At the time of the fall, the tractor's steps were wet and Mr. Vaskas' boots were muddy. (Vaskas Dep. at 134–35, 140–41, 150.) Mr. Vaskas noted that the Kenworth tractor's steps were different from those he had usually seen on trucks because they were grated instead of having sharp, straight lines across. (*Id.* at 150.)

The Kenworth tractor contained nine warning symbols, but none cautioned drivers or passengers about hazards associated with accessing the front of the cab. (Peck Dep. at 47–48, 92, 95.) Defendants also include a safety video and operating manual with each truck they manufacture. (*Id.* at 44.) In instructing drivers on the proper way of entering and exiting the tractor's cab, the safety video emphasizes the "three points of contact" system, which requires the driver to have two hands and one foot or two feet and one hand in contact with the cab access system at all times. (Doc. 14, Ex. I.) The operating manual specifically warns of the risk of a fall from the cab access system and also cautions that the

three points of contact system should be used. (Doc. 14, Ex. H, at 7–8.) It also warns of the heightened risk of a fall from the cab access system when conditions are wet or muddy. (*Id.*) Mr. Vaskas neither viewed the safety video nor the operating manual included with the Kenworth tractor, nor was he aware of whether the manual was located in the tractor's glove box. (Vaskas Dep. at 123.) However, Mr. Vaskas understood that the three points of contact system was the proper way to enter or exit a truck cab, had received training on the system (*Id.* at 60), and was required by R.C. Moore to use the system when navigating tractor steps (Doc. 14, Ex. G., at 2).

Mr. Vaskas and his wife, Plaintiff Deanna Vaskas, commenced this action in the Court of Common Pleas of Lackawanna County, Pennsylvania, on August 11, 2009, alleging negligence, strict products liability, breach of warranty, and loss of consortium claims against Kenworth. (Doc. 1, Ex. A.) On May 12, 2010, Kenworth successfully removed the case to this Court on diversity grounds. (Doc. 1.)

This Court entered a Case Management Order on February 27, 2012 (Doc. 7) and amended the order on April 19, 2012 (Doc. 11). The Amended Case Management Order placed the case on the January 2013 trial list and required Plaintiffs and Defendants to comply with the requirements of Federal Rule of Civil Procedure 26(a)(2) with respect to expert witnesses no later than August 1, 2012 and September 1, 2012, respectively. (*Id.* at ¶¶ 1, 4.) Supplemental expert reports were due no later than October 1, 2012, and the parties were to complete expert discovery by October 15, 2012. (*Id.* at ¶¶ 2, 4.) The disclosures required by Federal Rule of Civil Procedure 26(a)(3) were to be made by August 1, 2012, the same day that dispositive motions were due. (*Id.* at ¶¶ 4–5.)

On August 1, 2012, Plaintiffs disclosed the expert report of Traci K. Campbell, P.E., dated May 4, 2009 (the "Campbell Report"). (Doc. 21, Ex. 2). The Campbell Report, which was six pages long and contained fourteen bullet-point statements of opinions, did not rely on the record generated during discovery. (Doc. 21 at 2.) That same day, Defendants filed a Motion for Summary Judgment. (Doc. 13.) In their brief in opposition, filed August 21, 2012, Plaintiffs argued that the opinions in the Campbell Report created genuine issues

3

of material fact. (Doc. 16 at 3–4, 9, 11, 14–16.) Defendants' reply brief, filed September 4, 2012, argued against the sufficiency of the opinions in the Campbell Report. (Doc. 17 at 2–6.) On September 7, 2012, Plaintiffs requested a supplemental report from Ms. Campbell, which they both received and served on Defendants on October 1, 2012. (Doc. 24 at 5, Ex. F.) The thirteen page addendum contained twenty-seven bullet-point statements of opinion, many of which were not in the Campbell Report. (Doc. 21 at 2.)

On October 30, 2012, Plaintiffs filed their Motion to Supplement (Doc. 18), which asks this Court to consider the addendum to the Campbell Report in deciding Defendants' Motion for Summary Judgment. In response, Defendants request that this Court deny Plaintiffs' motion and strike the addendum to the Campbell Report, or, alternatively, compel Plaintiffs to produce Ms. Campbell for deposition and grant Defendants leave to serve supplemental expert reports on Plaintiffs. (Doc. 21 at 11.) Plaintiffs' Motion to Supplement and Defendants' Motion for Summary Judgment have been fully briefed and are now ripe for this Court's review.

## II. Discussion

### A. Plaintiffs' Motion to Supplement (Doc. 18)

Plaintiffs move to have this Court consider the October 1, 2012 addendum to the expert report of Traci K. Campbell, P.E. in deciding Defendants' Motion for Summary Judgment. (Doc. 18 at 1.) Plaintiffs contend that the addendum is critical to this Court's resolution of Defendants' motion because it highlights existing issues of material fact and refutes Defendants' position that they are entitled to judgment as a matter of law. (Doc. 19 at 3.) In response, Defendants argue that the addendum should be struck pursuant to Federal Rule of Civil Procedure 37(c)(1) because Plaintiffs violated Federal Rules of Civil Procedure 26(a) and 26(e) by failing to timely disclose the addendum's new opinions. (Doc. 21 at 5–10.) Alternatively, Defendants argue that if the Court allows the addendum, it should compel Plaintiffs to produce Ms. Campbell for deposition, grant Defendants leave to serve supplemental expert reports on Plaintiffs, and possibly allow Defendants to address the addendum in additional summary

4

judgment briefing.

Defendants specifically contend that Plaintiffs violated Federal Rules of Civil Procedure 26(a)(2) and 26(e)(2) by submitting the addendum, which is more than twice as long as the Campbell Report, in an untimely manner and failing to disclose its additional opinions. (Doc. 21 at 6.) Plaintiffs served the addendum on October 1, 2012 – two months after the Campbell Report and several weeks after summary judgment briefing ended on September 4, 2012. (*Id.* at 6–7.) Plaintiffs respond that they followed the Court's Amended Case Management Order by making their Rule 26(a)(2) expert disclosures on August 1, 2012 and serving their supplemental expert report no later than October 1, 2012, two weeks in advance of the expert discovery deadline. (Doc. 21 at 1–2.) Plaintiffs note that even if the addendum prejudiced Defendants in any way, they failed to allege prejudice or remedy it with a rebuttal report within thirty days of service, as is permitted by Rule 26(a)(2)(D). (*Id.* at 2.)

Under the Federal Rules of Civil Procedure, parties must disclose the identity of expert witnesses who may testify at trial and accompany that disclosure with a written report prepared by the witness which includes "a complete statement of all opinions the witness will express and the basis and reasons for them; the facts or data considered by the witness in forming them; any exhibits that will be used to summarize or support them," as well as additional information about the witness' qualifications, prior expert testimony, and compensation received in the relevant case. Fed. R. Civ. P. 26(a)(2)(A)–(B). The parties must make these disclosures according to deadlines set in any case management order or other order issued by the court. Fed. R. Civ. P. 26(a)(2)(D). Rule 26(a)(2) "imposes . . . [a] duty to disclose information regarding expert testimony in advance of trial that opposing parties have a reasonable opportunity to prepare for effective cross examination and perhaps arrange for expert testimony from other witnesses." Fed. R. Civ. P. 26, cmt. to 1993 Amendments.

The Federal Rules also give the parties a continuing duty to timely supplement their expert disclosures when they are incorrect or incomplete if the additional

5

information has not otherwise been known to the other parties in the case. Fed. R. Civ. P. 26(a)(2)(E); Fed. R. Civ. P. 26(e). The duty to supplement applies to the expert's report and opinions given during deposition testimony. Fed. R. Civ. P. 26(e)(2). Supplemental reports must be disclosed by the time a party's pre-trial disclosures are due. *Id.*

Here, Plaintiffs have followed the Amended Case Management Order as well as Rule 26(a) and 26(e). The Amended Case Management Order required Plaintiffs to make their Rule 26(a)(2) disclosures no later than August 1, 2012. (Doc. 11, ¶ 4.) On that date, Plaintiffs disclosed the materials required by Rule 26(a)(2), including the Campbell Report. (Doc. 24 at 4.) On September 7, 2012, days after encountering the Defendants' argument that the Campbell Report was incomplete, Plaintiffs requested a supplemental report from Ms. Campbell. (Doc. 24 at 5, Ex. F.) On October 1, 2012, the deadline for supplemental expert reports, Plaintiffs received the addendum from Ms. Campbell and served it upon Defendants that same day. (Doc. 24 at 5.) Pursuant to Rules 26(a)(2) and 26(e), Plaintiffs timely supplemented their expert disclosures by serving Defendants with the addendum the same day that Plaintiffs received it. Thus, because Plaintiffs made their Rule 26(a) disclosures on time and supplemented them in a timely manner, they have not violated Rules 26(a) and 26(e). Accordingly, it is unnecessary for this Court to exclude the addendum, which was timely filed and disclosed, pursuant to Federal Rule of Civil Procedure 37(c)(1) or permit the deposition of Ms. Campbell. Plaintiffs' Motion to Supplement (Doc. 18) will be granted and this Court will consider the addendum in deciding Defendants' Motion for Summary Judgment.

**B.     Defendants' Motion for Summary Judgment**

**1. Legal Standard**

Summary judgment is appropriate "if the pleadings, the discovery and disclosure materials on file, and any affidavits show that there is no genuine issue as to any material fact and that the movant is entitled to judgment as a matter of law." Fed. R. Civ.

P. 56(c)(2). A fact is material if proof of its existence or nonexistence might affect the outcome of the suit under the applicable substantive law. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986).

Where there is no material fact in dispute, the moving party need only establish that it is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(c)(2). Where, however, there is a disputed issue of material fact, summary judgment is appropriate only if the factual dispute is not a genuine one. *Anderson*, 477 U.S. at 248. An issue of material fact is genuine if "a reasonable jury could return a verdict for the nonmoving party." *Id.*

Where there is a material fact in dispute, the moving party has the initial burden of proving that: (1) there is no genuine issue of material fact; and (2) the moving party is entitled to judgment as a matter of law. *See* 2D Charles Alan Wright & Arthur R. Miller, *Federal Practice and Procedure* § 2727 (2d ed. 1983). The moving party may present its own evidence or, where the nonmoving party has the burden of proof, simply point out to the court that "the nonmoving party has failed to make a sufficient showing on an essential element of her case." *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986).

"When considering whether there exist genuine issues of material fact, the court is required to examine the evidence of record in the light most favorable to the party opposing summary judgment, and resolve all reasonable inferences in that party's favor." *Wishkin v. Potter*, 476 F.3d 180, 184 (3d Cir. 2007). Once the moving party has satisfied its initial burden, the burden shifts to the non-moving party to either present affirmative evidence supporting its version of the material facts or to refute the moving party's contention that the facts entitle it to judgment as a matter of law. *Anderson*, 477 U.S. at 256–57. The Court need not accept mere conclusory allegations, whether they are made in the complaint or a sworn statement. *Lujan v. Nat'l Wildlife Fed'n*, 497 U.S. 871, 888 (1990).

"To prevail on a motion for summary judgment, the non-moving party must show specific facts such that a reasonable jury could find in that party's favor, thereby

establishing a genuine issue of fact for trial." *Galli v. New Jersey Meadowlands Comm'n*, 490 F.3d 265, 270 (3d Cir. 2007) (citing Fed. R. Civ. P. 56(e)). "While the evidence that the non-moving party presents may be either direct or circumstantial, and need not be as great as a preponderance, the evidence must be more than a scintilla." *Id.* (quoting *Hugh v. Butler Cnty. Family YMCA*, 418 F.3d 265, 267 (3d Cir. 2005)). In deciding a motion for summary judgment, "the judge's function is not himself to weigh the evidence and determine the truth of the matter but to determine whether there is a genuine issue for trial." *Anderson*, 477 U.S. at 249.

### 2. Mr. Vaskas' Breach of Warranty Claims

Defendants argue that they are entitled to summary judgment on Mr. Vaskas' breach of warranty claims because they were raised more than four years after the tender of delivery of the Kenworth truck and are therefore time-barred under Pennsylvania law.

In Pennsylvania, a breach of warranty claim is governed by a four-year statute of limitations period. *See* 13 Pa. C.S.A. § 2725(a) ("an action for breach of any contract for sale must be commenced within four years after the cause of action has accrued"). In addition, "a cause of action accrues when the breach occurs, regardless of the aggrieved party's lack of knowledge of the breach. A breach of warranty occurs when tender of delivery is made, except that where a warranty explicitly extends to future performance of the goods . . . ." 13 Pa. C.S.A. § 2725(b). "The Pennsylvania Supreme Court has squarely held that the four-year statute of limitations applies to all warranty actions arising from sales of goods, including those in which the plaintiff seeks to recover for personal injuries." *Pitts v. N. Telecom, Inc.*, 24 F. Supp. 2d 437, 443 (E.D. Pa. 1998) (citing *Williams v. W. Penn Power Co.*, 502 Pa. 557, 467 A.2d 811, 818 (1983)). Breach of warranty claims accrue on the date that the seller tenders delivery of the goods. *See Pitts*, 24 F. Supp. 2d at 443 (citing *Hornberger v. Gen. Motors Corp.*, 929 F. Supp. 884, n.2d (E.D. Pa. 1996)).

It is undisputed that Defendants tendered the Kenworth tractor to R.C. Moore on

8

May 19, 2005 (Doc. 14, Ex. B) and Plaintiffs brought their suit on August 11, 2009 (Doc. 1, Ex. A). As breach of warranty claims, which are governed by a four-year statute of limitations under Pennsylvania law, accrue on the date that the seller tenders delivery of goods, Mr. Vaskas had until May 19, 2009 to bring his breach of warranty claims. Thus, because Mr. Vaskas, by his own admission, failed to bring his breach of warranty claims within the applicable statute of limitations, they are time-barred and summary judgment will be granted in Defendants' favor as to these claims.

### 3. Mr. Vaskas' Strict Liability Claims

Defendants move for summary judgment as to Mr. Vaskas' strict liability claims on the grounds that the Kenworth tractor is not defectively designed or unreasonably safe.

The substantive law of Pennsylvania applies to this strict products liability claim. 28 U.S.C. § 1332(a)(1); *Chamberlain v. Giampapa*, 210 F.3d 154, 158 (3d Cir. 2000) (citing *Erie R.R. v. Tompkins*, 304 U.S. 64, 78 (1938)). According to the *Erie* doctrine, a court sitting in diversity should apply the state law as pronounced by the highest court of the state. *See Edwards v. HOVENSA, LLC*, 497 F.3d 355, 361 (3d Cir. 2007). "The highest court of the state is the final arbiter of what is state law. When it has spoken, its pronouncement is to be accepted by federal courts as defining state law unless it has later given clear and persuasive indication that its pronouncement will be modified, limited, or restricted." *West v. Am. Tel. & Tel. Co.*, 311 U.S. 223, 236, 61 S. Ct. 179, 85 L. Ed. 139 (1940) (citing *Wichita Royalty Co. v. City Nat'l Bank of Wichita Falls*, 306 U.S. 103, 107, 59 S. Ct. 420, 83 L. Ed. 515 (1939)). However, when the highest court of the state has not addressed an issue, a federal court must predict how the highest state court would resolve the issue. *See Holmes v. Kimco Realty Corp.*, 598 F.3d 115, 118 (3d Cir. 2010). And, in making this prediction, the court "may give serious consideration to the opinion of an intermediate appellate court." *Aetna Cas. & Sur. Co. v. Farrell*, 855 F.2d 146, 148-49 (3d Cir. 1988) (citing *Commercial Union Ins. Co. v. Butuminous Cas. Corp.*, 851 F.2d 98, 100 (3d Cir. 1988); *Aloe Coal Co. v. Clark Equip. Co.*, 816 F.2d 110, 117 (3d Cir. 1987); *Wilson v. Asten-Hill Mfg. Co.*, 791 F.2d 30, 32 (3d Cir. 1986)). The

decisions of intermediate state appellate courts can be disregarded when a federal court "'is convinced by other persuasive data that the highest court of the state would decide otherwise.'" *Buffetta*, 230 F.3d at 637 (quoting *West*, 311 U.S. at 237).

Once the United States Court of Appeals for the Third Circuit predicts how a state's highest court would resolve an issue, district courts within the circuit are bound by this prediction "unless the state supreme court issues a contrary decision or it appears from a subsequent decision of the appellate courts that the court of appeals erred." *Largoza v. Gen. Elec. Co.*, 538 F. Supp. 1164, 1166 (E.D. Pa. 1982) (citing *Doane v. Travelers Ins. Co.*, 266 F. Supp. 504, 405 (E.D. Pa. 1966)). The Third Circuit has held that "federal district courts applying Pennsylvania law to products liability cases should look to sections 1 and 2 of the Restatement (Third) of Torts." *Covell v. Bell Sports, Inc.*, 651 F.3d 357, 359 (3d Cir. 2011). The Pennsylvania Supreme Court has not ruled whether the Restatement (Third) of Torts provides the controlling analysis for products liability claims rather than the analysis under the Restatement (Second) of Torts. *See Giehl v. Terex Utilities*, No. 12-0083, 2012 WL 1183719, at *9 (M.D. Pa. Apr. 9, 2012). Therefore, based on the Third Circuit's pronouncement that the Restatement (Third) applies to products liability actions arising under Pennsylvania law, and absent a decision from the Pennsylvania Supreme Court to the contrary, the Court will apply Sections 1 and 2 of the Restatement (Third) in this matter.

Section 1 of the Restatement (Third) provides that "[o]ne engaged in the business of selling or otherwise distributing products who sells or distributes a defective product is subject to liability for harm to persons . . . caused by the defect." Restatement (Third) of Torts § 1 (1998). Section 2 enumerates the possible categories of product defect:

> A product is defective when, at the time of sale or distribution, it contains a manufacturing defect, is defective in design, or is defective because of adequate instructions or warnings. A product:
>
> (a) contains a manufacturing defect when the product departs from its intended design even though all possible care was exercised in the preparation and marketing of the product;
>
> (b) is defective in design when the foreseeable risks of harm posed

10

> by the product could have been reduced or avoided by the adoption of a reasonable alternative design by the seller or other distributor, or a predecessor in the commercial chain of distribution, and the omission of the alternative design renders the product not reasonably safe;
>
> (c) is defective because of inadequate instructions or warnings when the foreseeable risks of harm posed by the product could have been reduced or avoided by the provision of reasonable instructions or warnings by the seller or other distributor, or a predecessor in the commercial chain of distribution, and the omission of the instructions or warnings renders the product not reasonably safe.

*Id.* at § 2.

### a. Manufacturing Defect

Mr. Vaskas alleges that Defendants are strictly liable for defectively manufacturing the Kenworth tractor. (Doc. 1, Ex. A at ¶¶ 50, 54.) He points to the deviation of the steps' depth and height from Kenworth's internal design specifications and requirements as evidence of manufacturing defects. (*Id.*; Peck Dep. at 77, 79; Doc. 24, Ex. F at ¶ 2.) Defendants claim that they are entitled to summary judgment on these claims because Mr. Vaskas has not raised these claims until Plaintiffs' brief in opposition to summary judgment. (Doc. 17 at 5–6.)

Section 2(a) of the Restatement (Third) imposes liability for manufacturing defects whether or not the manufacturer's quality control efforts satisfy standards of reasonableness. Restatement (Third) of Torts § 2(b), cmt. a. A manufacturing defect is "a departure from a product unit's design specifications." *Id.*, cmt. c.

In addition to alleging that the Kenworth tractor was manufactured defectively (Doc. 1, Ex. A at ¶¶ 50, 54), Mr. Vaskas has adduced evidence that the steps of the Kenworth tractor contain a manufacturing defect. First, he has introduced evidence that the distance from the tractor's top step to its bottom step (21.5 inches) exceeded the distance on the design specifications (19.5 inches). (Peck Dep. at 77, 79.) He has also adduced evidence that the depth of the tractor's cab steps (4.625 inches) did not meet Kenworth's internal requirements (4.76 inches). (Doc. 24, Ex. F at ¶ 2.) Based on this evidence, the Court concludes that a jury could find that the Kenworth tractor's steps

11

were manufactured defectively. Accordingly, Defendants' Motion for Summary Judgment will be denied as to Mr. Vaskas' strict liability manufacturing defect claims.

### b. Design Defect

Mr. Vaskas also alleges that Defendants are strictly liable for defectively designing the Kenworth tractor. (Doc. 1, Ex. A at ¶¶ 50, 54.) He specifically alleges that Defendants' design of the Kenworth tractor was defective because it failed to have "properly designed step treads," "appropriate non-skid or slip resistant surface on the step treads," and "a second handrail available for use upon entering and/or exiting the tractor." (*Id.*) He also points to reasonable, technically and economically feasibly alternative designs for the Kenworth tractor's steps and handrails that would make it safer. (Doc. 24, Ex. F at ¶¶ 21, 24.) Defendants argue that they are entitled to summary judgment on these claims because under a risk-utility analysis, the Kenworth tractor is not unreasonably dangerous. (Doc. 14 at 7.)

Whether or not a particular design is defective under the Restatement (Third) depends, in relevant part, upon whether foreseeable risks of harm from the product could have been reduced or avoided by the distributor's adoption of a reasonable alternative design. Restatement (Third) of Torts § 2(b). Furthermore, the absence of such an alternative design must render the product "not reasonably safe." *Id.* "In other words, a plaintiff cannot prevail in imposing strict liability . . . if the proposed design merely makes an already safe product slightly safer." *Sansom v. Crown Equip. Corp.*, No. 10-958, 2012 WL 3027989, at *7 (W.D. Pa. July 24, 2012).

Accordingly, to establish a *prima facie* case of design defect, a plaintiff bears the burden of proving that a reasonable alternative design was, or reasonably could have been, available at the time of sale. Restatement (Third) of Torts § 2(b), cmt. d. Section 2(b) adopts a reasonableness or "risk-utility balancing" test to judge the defectiveness of product designs. *Id.* "[T]he test is whether a reasonable alternative design would, at reasonable cost, have reduced the foreseeable risks of harm posed by the product and, if so, whether the omission of the alternative design by the seller . . . rendered the

12

product not reasonably safe." *Id.* A plaintiff may rely on credible expert testimony that the alternative design could have been practically adopted at the time of sale, even where the expert has not produced a prototype. Restatement (Third) of Torts § 2, cmt. f. A court may consider a broad range of factors in determining whether an alternative design is reasonable and whether its omission renders a product not reasonably safe. *Id.* Factors relevant to this determination include "the magnitude and probability of the foreseeable risks of harm, the instructions and warnings accompanying the product, and the nature and strength of consumer expectations regarding the product . . . [and] [t]he relative advantages and disadvantages of the product as designed and as it alternatively could have been designed." *Id.*

      Regarding the foreseeable risk of harm, the Court concludes that a jury could find, based on the record evidence, that Defendants could have foreseen that an operator of the Kenworth tractor could suffer injury by slipping or falling while entering or exiting the cab, especially in wet or muddy conditions. Indeed, Defendants repeatedly acknowledge this risk of harm in the Kenworth tractor's operating manual. The manual warns drivers to refrain from jumping out of the cab or entering the cab without proper caution, as they could slip or fall and possibly suffer a serious injury. (Doc. 14, Ex. H, at 3.) It also warns drivers that they could slip and fall if the steps are wet or icy, or if the driver steps in fuel, oil, or grease. (*Id.*) It further advises drivers that they can help avoid personal injury due to a slip or fall by using the three points of contact system whenever possible, watching where they are going, and using more care when their footwear or the tractor's steps and handhold are wet or coated with mud or fuel. (*Id.* at 4.)

      Moving to the existence of reasonable alternative designs, Mr. Vaskas has adduced evidence of reasonable alternative designs for the Kenworth tractor's cab access system that are both technically and economically feasible. With regard to the handrails and handholds, Plaintiffs' expert, Ms. Campbell, opines that a technically and economically feasible reasonable alternative design would add them to the inside of the driver's or passenger's door. (Doc. 24, Ex. F at ¶ 21.) Other leading manufacturers

13

were commonly implementing handrails on both sides of tractor steps at the time of the Kenworth tractor's manufacture. (*Id.* at ¶ 24.) Further, Defendants' corporate representative admitted that it is a safer design to have more handholds than less. (Doc. 16, Ex. D at 64:1–5.) Ms. Campbell states that implementing this alternative design "would have eliminated the awkward positioning of the user as required to utilize the one handrail present and increased the likelihood of usage by users with having handrails . . . located on each of their sides." (Doc. 24, Ex. F at ¶ 21.) She also opines that technically and economically feasible alternative designs for the steps' treads "include using steps with raised perforations or serrations to the edge of the step instead of leaving a 7/16 inch gap of smooth metal, making the gap between the perforations and the edge of the step smaller . . ., and application of an adhesive grit strip from the edge of the perforations that would fold over the rounded edge of the step." (*Id.*) These alternatives "would increase the slip resistance of the steps for users entering and exiting the cab." (*Id.*) Based on this evidence, a jury could find that at least one of the proposed reasonable alternative designs would, at reasonable cost, have reduced the foreseeable risks of harm posed by the cab access system of the Kenworth tractor.

However, the record is devoid of evidence that the omission of a reasonable alternative design has rendered the cab access system of the Kenworth tractor not reasonably safe. Although Ms. Campbell opines that implementing the technically and economically feasible alternative designs would make the cab access system safer and would have prevented Mr. Vaskas' slip and fall, neither she nor Mr. Vaskas have adduced evidence that the Kenworth tractor is not reasonably safe because it does not feature those designs. Furthermore, the magnitude and probability of the foreseeable harm, especially in light of the numerous warnings contained in the tractor's operating manual, is not significant enough to convince the Court that the Kenworth tractor is not reasonably safe in its current state. Therefore, this Court concludes that, based on the record evidence, a jury could not find that the omission of a reasonable alternative design of the cab access system has rendered the Kenworth tractor not reasonably safe.

In sum, applying the reasonableness test articulated by the Restatement (Third) of Torts for imposition of strict liability for an alleged design defect, the Court holds, after reviewing the evidence in the light most favorable to Plaintiffs, that Mr. Vaskas' strict liability design defect claims fail as a matter of law. Accordingly, summary judgment will be granted in favor of Defendants on Mr. Vaskas' strict liability design defect claims.

### c. Defective due to Inadequate Warnings

Mr. Vaskas further alleges that Defendants are strictly liable because the Kenworth tractor is defective due to inadequate instructions or warnings. (Doc. 1, Ex. A at ¶¶ 50, 54.) He asserts that Defendants failed to adequately warn of the unique dangers presented by the Kenworth tractor's steps, which "were non-complaint with anti-skid standards, and had an unfamiliar design that was insufficiently slip-resistant." (Doc. 16 at 16.) Although he acknowledges that the Kenworth tractor's operating manual contained warnings about the cab access system, he maintains that the manual failed to address the relevant hazards with specificity and the tractor itself failed to include a warning sticker. (*Id.* at 17.) Defendants respond that they are entitled to summary judgment on these claims because the operating manual provided adequate instructions and warnings about a fall hazard associated with the cab access system, especially in inclement conditions, and how to avoid that hazard. (Doc. 14 at 11–12.) They also contend that summary judgment is warranted on these claims because Mr. Vaskas failed to use the three points of contact system highlighted in the operating manual and thereby failed to obey an adequate warning that was given. (*Id.* at 11–13.)

Under § 2(c) of the Restatement (Third) of Torts, a product is defective because of inadequate instructions or warnings when "the foreseeable risks of harm posed by the product could have been reduced or avoided by the provision of reasonable instructions or warnings by the seller or other distributor . . . and the omission of the instructions or warnings renders the product not reasonably safe." The reasonableness test in § 2(c) for judging the adequacy of product instructions and warnings parallels § 2(b)'s standard for judging the safety of product designs. Restatement (Third) of Torts § 2(c), cmt. i.

15

The defectiveness concept is more difficult to apply in the warnings context, however, because no easy guideline exists for courts to adopt in assessing the adequacy of product warnings and instructions. *Id.* "It is impossible to identify anything approaching a perfect level of detail that should be communicated in product disclosures," given that "warnings and instructions can rarely communicate all potentially relevant information." *Id.* A plaintiff must prove that adequate instructions or warnings were not provided, but his ability "to imagine a hypothetical better warning in the aftermath of an accident does not establish that the warning . . . accompanying the product was inadequate." *Id.* In evaluating the adequacy of product warnings and instructions, courts must focus on various factors, such as "content and comprehensibility, intensity of expression, and the characteristics of expected user groups." *Id.*

Here, Mr. Vaskas has adduced evidence that the foreseeable risks of harm posed by slippery cab steps could have been reduced or avoided by the provision of reasonable instructions or warnings. Plaintiffs' expert, Ms. Campbell, opines that basic engineering principles teach that warnings are most effective when placed at the point of the potential hazard and that Mr. Vaskas' fall would not have happened but for the Defendants' failure to place stickers in the cab access area warning of stair slipperiness in inclement conditions. (Doc. 24, Ex. F at ¶¶ 10, 14, 16, 21.) However, Mr. Vaskas has not adduced any evidence that the Kenworth tractor is not reasonably safe because Defendants have not placed place warning stickers in the cab access area. Based on the record evidence, this Court concludes that a jury could not find that the omission of stickers in the cab access area warning of stair slipperiness in inclement conditions renders the Kenworth tractor not reasonably safe. Accordingly, Defendants' Motion for Summary Judgment will be granted with respect to Mr. Vaskas' strict liability inadequate warnings claims.

**4. Mr. Vaskas' Negligence Claims**

Mr. Vaskas asserts that Defendants negligently designed and manufactured the Kenworth tractor which caused his injuries. (Doc. 1, Ex. A, ¶¶ 25-44.) He alleges that

Defendants were negligent in failing to have properly designed step treads, a non-skid or slip resistant surface on the step treads, proper warnings, steps of a proper rise and width, and a second handrail on the Kenworth tractor. (*Id.* at ¶¶ 26, 36.) He also alleges that Defendants negligently failed to identify the hazard of user stability and design alternatives for handrails or handholds as well as design according to the Code of Federal Regulations and recommendations of the Pennsylvania Department of Transportation and the Society of Automotive Engineers. (*Id.* at ¶¶ 26, 36.)

Defendants claim that summary judgment should be entered in their favor on Mr. Vaskas' negligence claims because he has failed to show any evidence of a breach of duty in their design or manufacture of the Kenworth tractor or that any defect in manufacture or design was the proximate cause of his injuries. (Doc. 17 at 3–8.) Mr. Vaskas responds that there are genuine disputes of material fact as to these issues that should be left for the jury. (Doc. 16 at 12.)

Under Pennsylvania law, for Mr. Vaskas to prove a claim for negligence under design or manufacture theory, he must show: "that the manufacturer owed a duty to the plaintiff; that the manufacturer breached that duty; and such breach was the proximate cause of plaintiff's injuries." *Parkinson v. Guidant Corp.,* 315 F. Supp. 2d 741, 749 (W.D. Pa. 2004) (citing *Dauphin Deposit Bank & Trust v. Toyota*, 408 Pa. Super. 256, 596 A.2d 845, 849–50 (1991)); see also *Van Scoy v. Powermatic, a Div. Of Stanwich Indus., Inc.*, 810 F. Supp. 131, 135 (M.D. Pa. 1992) ("[I]n the negligence aspect of his case, in order to recover, the Plaintiff must not only prove that the product was defective and that the defect caused his injury, but . . . [also] that in manufacturing or supplying the product, the Defendant failed to exercise due care.") Furthermore, he must prove that the manufacturer was at fault. *Parkinson*, 315 F. Supp. 2d at 749.

### a. Breach of Duty

Defendants have a duty of ordinary and reasonable care in designing and manufacturing the Kenworth tractor. *See Dyson v. Gen. Motors Corp.*, 298 F. Supp. 1064, 1067 (E.D. Pa. 1969). Through Plaintiffs' expert, Mr. Vaskas has adduced

17

evidence that Defendants have breached that duty.  Ms. Campbell has opined that the depth of the Kenworth tractor's steps failed to meet Defendants' design specifications and Federal Motor Vehicle Safety Standards. (Doc. 20, Ex. 4, at ¶ 2.)  She further opines that Defendants failed to conform to fundamental engineering principles and practices by designing and manufacturing non-perforated metal steps with rounded edges, failing to place a warning sticker in the cab access area, and using only one handhold in the cab access system.  (*Id.* at ¶¶ 8, 16–19, 21, 24–25.)  This evidence, when viewed in the light most favorable to Mr. Vaskas, the non-movant, creates a genuine issue of material fact as to whether Defendants' breached the duty owed to him.

    **b.  Proximate Cause**

To establish a causal connection between Defendants' conduct and Mr. Vaskas' injuries, Mr. Vaskas must show that Defendants were a proximate cause of his injuries. *See Hamil v. Bashline,* 481 Pa. 256, 392 A.2d 1280,1284 (1978) (citing *Flickinger Estate v. Ristky,* 452 Pa. 69, 305 A.2d 40 (1973); *Dornan v. Johnston,* 421 Pa. 58, 218 A.2d 808 (1966); *Cuthbert v. Philadelphia,* 417 Pa. 610, 209 A.2d 261 (1965); *Gift v. Palmer,* 392 Pa. 628, 141 A.2d 408 (1958); *Fries v. Ritter,* 381 Pa., 470, 113 A.2d 189 (1955)). "Pennsylvania law defines proximate cause as causation which was a factual cause in bringing about the injury."  *Carter v. United States*, No. 11-1669, 2012 WL 2215343, at *5 (M.D. Pa. June 11, 2012) (citing *Gorman v. Costello*, 929 A.2d 1208, 1213 (Pa. Super. 2007); Pa. SSJI (Civ.) §§ 13.00, 13.160).  "Conduct is a factual cause of harm when the harm would not have occurred absent the conduct.  To be a factual cause, the conduct must have been an actual, real factor in causing the harm, even if the result is unusual or unexpected.  A factual cause cannot be . . . [a] factor having no connection or only an insignificant connection with the harm."  Pa. SSJI (Civ.) § 13.160.  However, "[t]o be a factual cause, the defendant's conduct need not be the only factual cause. The fact that some other causes concur with the negligence of the defendant in producing an injury does not relieve the defendant from liability as long as [his or her] own negligence is a factual cause of the injury."  *Id.*  Because the issue of proximate

18

cause is inherently fact-based, causation is generally a question of fact for the jury. *See Summers v. Cetainteed Corp.,* 606 Pa. 294, 314, 997 A.2d 1152, 1164 (2010). However, "where it is clear that reasonable minds could not differ on the issue," the issue of causation may be removed from the trier of fact's consideration. *Id.* (quoting *Hamil,* 392 A.2d at 1285–86 (1978)).

Here, Ms. Campbell opines that but for Defendants' failures in designing and manufacturing the Kenworth tractor and warning users of potential hazards, Mr. Vaskas would not have slipped and fallen off the steps and sustained injuries. (Doc. 24, Ex. F at ¶ 25.) When viewed in the light most favorable to Mr. Vaskas, this evidence creates a genuine issue of material fact as to whether Defendants' allegedly negligent design or manufacture of the Kenworth tractor was a proximate cause of his injuries.

In sum, because genuine issues of material fact exist as to the issues of breach of duty and causation, Defendants' motion will be denied as to Mr. Vaskas' negligence claims.

### III. Conclusion

For the above-mentioned reasons, Plaintiffs' Motion to Supplement (Doc. 18) is granted and Defendants' Motion for Summary Judgment (Doc. 14) is granted in part and denied in part.

An appropriate order follows.

| | |
|---|---|
| <u>January 8, 2013</u><br>Date | <u>/s/ A. Richard Caputo</u><br>A. Richard Caputo<br>United States District Judge |

19